Judge Co alter
(dissenting from the other judges) pronounced the following opinion :
If the xvhole answer is to be taken as responsive to the bill, and as evidence, uncontradicted by the competent number of witnesses to destroy it, this case, on the point of usury, would, to my mind, be a very clear one.
It would be simply this; that the appellee, Taylor, being in debt to Seth, payable at a future day, the appellant applies to him to take in his debt immediately, for that he and said Seth had made an arrangement in a tobacco contract, by which it would be agreeable to both of them that the appellee should purchase in his debt; that this proposition was seconded by Seth himself, and that the appellee, in making the payment, believed he was paying oil' his debt to Seth, who had made his ar *434 rangements with the appellant; that, when he advanced the 800/. it was in discharge of his debt; and that a loan of money was never spoken of, or contemplated» If this was the real transaction, I presume it would not be contended that a man, paying off his debt, due at a future day, to his creditor, or to his creditor’s friend and agent, and at the request and solicitation of his creditor, may not do it on terms with which all parties are satisfied.
But it is said, this part of the answer, setting up a new case, is not responsive to the bill, which charges the transaction to have been something different, and that, therefore, it must be proved by the defendant.
I shall not stop to decide this question, as I do not think it important in the final decision, according to the view I have taken of the subject; and shall, therefore, content myself by stating this case as if is made out by the bill, such parts of the answer as are responsive to the bill, and therefore .evidence, and the deposition of the witness.
I will here remark, though, that, there being an express charge of usury in the bill, though it does not state in what way, or by what devices, the parties had contrived to evade the law, the general answer, stating that there was no communication for a loan of money, and that the appellee had no idea that the appellant wished to borrow money, must be taken as responsive to that general charge of usury, and, if not contradicted by evidence, will leave the case as one in which usury is to be established, when the party, to be found guilty thereof, had no idea, or expectation, that a loan was intended, but believed he was making a contract by which he was to be discharged from a debt he owed!
The case, then, made out in this way, I take to be this; Taylor being indebted to Heth, .whose circumstances were somewhat embarrassed, and whose paper, to a .considerable amount, was standing out against him, the *435 appellant applied to him to know what sum he would give him to pay off said debt to Heth, in the bonds of the latter; in other words, to deliver, to Taylor, Heth’s bonds, to the amount of his debt due to Heth.
After frequent applications, it was agreed that, for 800/. the appellant would pay off the debt due to Heth, in his bonds ; which debt was 1,200/. payable in three annual instalments, without interest.
This agreement was not reduced to writing; but, some time after it was entered into, the appellant, having purchased up a bond of Heth’s for 300/. gave it to Taylor, and, at the same time, gave his bonds, with security, payable to Heth, for the balance, payable in three annual payments, but with this understanding, that Heth was not to assign them, so as to deprive the appellant of the privilege of discharging them in Heth’s paper. It was no part of the original agreement that the appellant was to give such bonds: but it took place, afterwards, in consequence of the appellant’s only delivering one bond of 300/. instead of the whole amount. Heth, afterwards, assigned these bonds to the appellee, Taylor, who told the appellant that he would receive nothing but the money for them: the appellant accordingly paid him the first and last of those bonds in money; but refusing to pay the second bond, suit was brought and judgment recovered against the security, without defence ; the attorney, to whom the appellant wrote to defend the suit, not practising in the court where it was brought. The security, against whom the judgment was obtained, not having paid the money to Taylor, but having obtained his receipt to enable him to make his motion, had got a judgment on motion against the appellant, who prays for an injunction, and general relief; relying, first, on the statute against usury; and, secondly, that, if the transaction was not usurious, it was an unconscionable bargain.
The charge of usury, in the bill, is a general charge»
*436 The answer expressly states that there was no communication for, or idea of, a loan ; and there is no testimony contradicting this. It appears that the security had. paid the money, and that, therefore, the case, as an injunction, is at an end; and then the only question is, whether the appellant ought to have had a decree against Taylor for the excess of his payments beyond 800/. and interest; or whether the chancellor was correct in dismissing his bill.
1st. The first question, then, is, was the transaction usurious ?
2d. If not, was it an unconscionable bargain ?
As to the first. Before a transaction can be pronounced usurious, which is not so on the very face of the bond, or contract, several things must be made to appear.
First, it must appear that a loan was intended, and that both parties were assenting thereto :(a) the statute . , . , , r , ... , is highly penal; and, although one or the parties may wish to raise money by the transaction, and may hold oui great gain to the other, as by offering him an extravagant price for property, &c. yet, if there was no communication for a loan, or a knowledge, in the party sell- ’ f ’ . . jng that a loan, or borrozving, was intended, it will not ^ be usury; whatever the court might do with the case, as a hard and unconscionable bargain*
Secondly; if it was not usury at the time when the contract was entered into, no after circumstance can J make it so ;(b) and any argument, therefore, drawn from . after circumstances, would be improper.
■ Thirdly; the court will not presume a contract to be usurious; but it must be proved to be so.
Fourthly; where this proof is not on the face of the bond, or contract, itself, as where A., in consideration of 100/. received, binds himself to pay 120/. at the end of a year, it must be collected from a view of all the circumstances attending the case; (c) as where there is a *437 bargain for great gain, and this upon a previous communication for the loan of money; or where there is a bargain which, on the face of it, will authorize the party to discharge himself by repayment of the money and interest, yet, by a secret understanding, he was bound not to avail himself of this privilege, but to subject himself to the penalty; all these, and a thousand other devices, would not avail, if the real object was a loan of money.
Fifthly; it is the intent that makes the usury: but, if there was no such intent, then the sale of property for double its real value, the discounting of notes, buying in securities, purchasing annuities, &c. however advantageous the contract may be, is not usury.(a)
I.et us examine the case by these principles, which I consider to be settled principles of law.
Was it a loan, and did the parties intend to evade the statute ? To this it may be answered, that though the bond, in this case, is simply for the payment of money, and nothing unfair on the face of it, yet the original contract, in the very terms of it, is usurious.(b)
I admit this is the fair and proper ground to put the question on; for the subsequent execution of the bonds will neither make that usury which was not so originally, nor legalize the original transaction, if it was unlawful and void.
Suppose, then, the original contract had been reduced to writing; it would have been to this effect:
The appellant, for 800/. received, would have bound himself to procure Heth's bonds, either then due, or, at least, payable in one, two and three years, to the amount of 1,200/. so as to cover and operate a discharge of a debt, to that amount, due in one, two and three years, from the appellee to said Heth. Would such agreement, upon the very face of it, be void ?
Suppose the appellant had produced Heth's bonds to the amount of 1,200/. and for which he had paid i,000/. and had offered them to the appellee for 800/. would the *438 purchase by him, for the express purpose of applying those bonds to the discharge of his own debt, have been an usurjous transaction ? Or, suppose Taylor had not been in debt to Heth, but hearing that his paper was in market, at a large discount, and wishing to procure it, as an advantageous speculation; believing Heth to be ultimately sure; and this wish being known to the appellant ; he inquires what he will agree to give him for Heth's paper, payable in one, two and three years; and he says, 13s. 4d. for 20s.; a bargain is struck; 800/. is paid, and a bond given for the delivery of Heth’s bonds, to the amount of 1,200/.: would such contract, necessarily, and on the face of it, be usurious ? There is no doubt but such a contract, made under particular circumstances, or accompanied with particular private understandings, (as, not to purchase the bonds of Heth, &c.) might be used as a device to cover an usurious contract s but the question now put is, whether such contract is, on the face of it, and without further averment, plainly usurious'; as where the party for the consideration of 100/. received, agrees to pay 120/.- at the end of the year.
Heth may, or may not, have paper in market: if he has paper out, it máy, or may not, be to be had at a great discount. But, if his paper is in market, and may be purchased at 10s. or 12s. for 20s. then the appellant would have made an advantageous contract; so that, unless it be said that bonds shall not be a subject of trade and speculation, I do not see that a contract, relative to them, even where they are contracted for at a considerable discount, must necessarily be usurious.(a) Where are all the contracts for the notes of Morris and Nicholson ?
If it be true, then, that the contract is not necessarily, and from the very terms of it, usurious and void, the next question will be, whether this contract, although it bus a fair and legal exterior, is not rotten at the cores *439 and used merely as a cover and device to avoid the statute ?
If this was the secret intent of the parties, they themselves must know it: the court will not, and cannot, presume that such was their intention: it must be proved; and, I presume, in the usual way, to wit, by an allegation to that effect, and the corresponding proof.(a)
The appellant, however, does not allege that a loan was intended; or that the paper of Heth was not in market; or that it had unexpectedly appreciated; or that there was any private agreement not to purchase it, but to subject himself to the penalty; or any other kind of shift, or device: on the contrary, he makes no other complaint in his bill, except that the appellee said he would receive nothing but the money: indeed, by the question he asks the witness, viz. “ whether Heth’s paper could not have been procured at a large discount,” he seems to admit that he could have discharged himself by a sum equal to the 800/. and interest, but that the appellee said he would have nothing but the money* As to the usury, he seems to rest that on the ground, that the contract, in the very terms of it, was usurious.
As before stated, 1 think it was not so; and, as to any shift, or device, to make it so, I also think that the court cannot make out a case, for the appellant, which lie has not made for himself; but that, if it was intended to show the case to be a shift to evade the statute, the appellant must have set out his case, so that the appellee could have had the benefit of his answer, and an opportunity to take depositions. No such allegation being made, the appellee, I presume, was not bound to prove that Ileth’s paper was in market, and could, at any time, have been procured at 13s. 4d. for 20s.; or at any other discount; (no complaint being made as to that;) or that he was not guilty of any other shift, or device* The only complaint is, that the appellee, afterwards, refused to take any thing but money. This, however* *440 being an after circumstance, would not make the original contract usurious. The most that could be said of it would be, that it was a breach of contract, and to be redressed, either by a court of law, or equity, as the case should appear. But on this point the party makes no case: he does not show that he procured and offered the bonds agreeably to his contract; because, if he had done that, and in proper time, so as to enable the appellee to set them off against his debt due to Heth; he might have had redress, even at law, perhaps. Nothing, however, of this kind is shown, or suggested; and if it was, this after circumstance would not make the original contract usurious.
I do not think this so strong a case as that of Price, &c. v. Campbell, 2 Call, 110. and perhaps not as much so as the case of Kenner v. Hord, 2 H. & M. 14.
But what will the court do, in this case, as to the 300/. ? Suppose the appellant (as is highly probable} got that bond for 200/. If he recovers 400/. of the appellee, he then puts 100/. clear gain in his pocket. But, suppose he had purchased Heth’s bonds to the amount of 1,150/. and had got them for 750l.: the appellee must have taken them at the nominal sum. The appellant would then have paid 1,150/. of the debt due Heth. He has received, though, but 800/. He must, therefore, recover 350/. from the appellee, and has already made 400/. by the speculation in the bonds; so that, in the whole, he would put a clear gain in his pocket of 7501.1
Does not this serve to show that this bargain, in the very terms of it, was not necessarily usurious, or even hard; but that it would depend on testimony aliunde, to prove either the one or the other.
' Suppose the appellant, in this case, had proved, by one witness only, that, although the terms of this contract were that he was to deliver bonds of Heth, yet it was privátely understood that he was not to have this privilege, but that it was merely used as a cover and device *441 ic* evade the statute ,* would such evidence have been proper ? If it would, then the party, by not stating his case, would deprive the other party of the legal weight of his answer, which would have been greater than the deposition of a single witness. This case, then, is not usurious on the face of it, and no other case is made out, or pretended.
Courts of equity may be disposed to go farther than courts of law, in deciding cases to be usurious; because they do not inflict such severe penalties; yet I am not prepared to say that a different rule of decision should obtain on the equity side, from what should obtain on the law side of this court; and this, I apprehend, would be a very naked case, at law, on which to recover the penalty.
I am also inclined to think that there must be a great difference between setting aside hard and unconscionable contracts, on the ground of hardship and undue advantage, and setting aside even such contracts, on the ground of usury. The statute is highly penal; and if the distinctions, between hard bargains and usurious ones, are done away, parties may be subject to severe penalties who never intended to violate the law. For these reasons, I apprehend, it is, that the rules which I have before stated are laid down, and, particularly, the rule that, the courts will not presume, but require proof, of usury, and that it was the intention of both parties to violate the law.
2. As to the second ground, that this is an unconscionable bargain.
I can see no evidence of it.
The appellant does not pretend to say that he could not have procured Hethls paper at a great discount; but, in fact, states the reverse.
The contract, therefore, might, originally, have been an advantageous one to him, had he purchased and delivered the bonds.
*442 He states, though, that the appellee refused to receive any thing but the money. This, though, does not prove the original contract hard.
If the appellee has broken his contract, then the appellant ought to have made out his case, to wit, that he had performed his part of the agreement, by procuring and tendering the bonds, in due time, to enable the appellee to use them as a set-off against Heth.
But he does not pretend to say this 5 on the contrary, says that he paid off the first and last bonds.
After this confirmation of the transaction^ and in the absence, of every allegation and evidence of hardship, I cannot give relief on that ground.
I therefore think, with great deference to the opinions of my more learned brethren, that there is no error in the decree of the chancellor dismissing the bill of the appellant.

 Floyer v. Edwards, Cowp. 151. Skipwith v. Gibson and Jefferson, 4 H. & M. 490. Price, &c. v. Campell, 2 Call, 110. 119. 121. M‘Guire v. Warder, Ex'r of Parker, 1 Wash. 369. Pollard v. Baylor's Devisees, 4 H. & M. 233. Chesterfield v. Janssen, 1 Atk. 308. Kenner v. Hord, 2 H. & M. 14.

 4 H. & M. 233. 3 T. R. 539. Tate v. Willings.

 1 Atk. 331, 332. 345

 1 Atk. 331, 332. 2 Vet. 153. 155, 1 Atk. 321.

 5 T. R. 537.

 2 H. & M. 14.

 3 T. R. 538.